IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL MARTINEZ WHITE,

        Plaintiff,

vs.                                       No. CIV 04-0565 RB/WDS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SANTA FE, NEW
MEXICO, ex rel., SANTA FE COUNTY
FIRE DEPARTMENT,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's ("County's") Motion for Partial

Summary Judgment on Plaintiff's Employment Discrimination and Breach of Contract Claims (Doc.

47), and Motion for Partial Summary Judgment on Plaintiff's Title VII Claims (Doc. 48), filed on

June 8, 2005.  Jurisdiction is founded upon 28 U.S.C. § 1331.  Having considered the submissions

of the parties, relevant law, and being otherwise fully advised, I find that these motions should be

granted in part and denied in part.


I.      **Background.**

      Plaintiff ("White"), an Hispanic male and a certified paramedic, was employed by the County's

Fire Department from August 1999 through August 2004.  (White Aff.)  In May 2003, White was

promoted to the position of EMS/Captain.  (*Id.*)  The County's personnel regulations provide for a

salary increase of not less than five percent upon promotion.  (*Id.*)

The EMS/Captain position was first proposed in the fall of 2002.  (Henson Aff.)  Assistant Fire Chief Kevin Henson was assigned to develop the budget and job qualifications for the position, in conjunction with Fire Chief Stan Holden and the County Human Resource Office.  (*Id.*)  The County determined that it would limit applicants to those employed as lieutenants within the County's Fire Department.  (*Id.*)

Chief Holden instructed Henson to announce the position to lieutenants at a staff meeting.  (Henson Aff.)  Chief Holden further directed Henson to announce that the salary would be at least five percent more than a lieutenant's pay, or $46,500.00. (Henson Aff.) Henson announced the position and the $46,500.00 salary level to the lieutenants, including White and another lieutenant named Kimmit Holland.  (*Id.*)  White and other lieutenants applied for the position.  (*Id.*)

The selection panel consisted of Assistant Fire Chiefs Henson and Saunders, and Bernadette Salazar from the County's Human Resource Department.  (White Aff.)  Prior to the interviews, Chief Holden advised Henson that Chief Holden wanted Lieutenant Holland selected for the position.  (Henson Aff.)  Henson told Chief Holden that policy required selection of the best qualified candidate and that qualifications could not be established until all interviews were completed.  (*Id.*)  Chief Holden repeated his preference for Holland.  (*Id.*)

After conducting interviews and reviewing qualifications, the selection panel unanimously determined that White was the most qualified candidate. (Henson Aff.)

After White was selected, Lieutenant Holland filed a grievance alleging that the selection of White was unfair and biased.  (White Aff.; Henson Aff.)  Helen Quintana of the County's Human Resource Office investigated the grievance.  During the investigation, Quintana interviewed Assistant Chief Henson about the selection process.  (Henson Aff.)  Assistant Chief Henson advised Quintana

that White was the most qualified applicant. (*Id.*) Assistant Chief Henson elaborated that he believed that Chief Holden's opposition to White's promotion was based on race. (*Id.*) Assistant Chief Henson stated that his belief was based on the lack of Hispanic managers within the Fire Department, Chief Holden's derogatory slurs directed at Hispanics, and the fact that Chief Holden could not articulate a specific objection to White's promotion. (*Id.*)

During the investigation, White met with Chief Holden. (White Aff.) According to White, Chief Holden stated that he did not favor White for the EMS/Captain position and asked White to withdraw his application. (*Id.*) White refused to withdraw his application and he reported to Quintana that Chief Holden had communications with him about the selection process. (*Id.*) The investigation determined that the selection of White was fair and unbiased. (*Id.*) White's promotion was approved by the Human Resource Office. (*Id.*)

After approval of the promotion, White met with Chief Holden to discuss his new salary. (White Aff.) Chief Holden told White that the salary would be $44,143.00, and not $46,500.00. (*Id.*) When White protested, Chief Holden told him that funding for the position had not become available as anticipated. (*Id.*)

After the meeting with Chief Holden, White visited with County Budget Officer Carlos Nava, and inquired about funding for the position. (White Aff.) Nava told White that funding was at the anticipated level and that the position was budgeted to pay approximately $46,500.00. (*Id.*) White met with Chief Holden and reported the statement of Nava. (*Id.*) Chief Holden told White that Nava did not know what he was talking about, the money had been spent elsewhere, and that White should never again contact Nava about his salary. (*Id.*) Chief Holden told White that he could accept the $44,143.00 salary, or decline the promotion. (*Id.*) White informed Chief Holden that he would accept

the position, but that he would file a grievance concerning the salary level.  (*Id.*)

White filed a grievance with County Manager Gilbert Gonzales.  (White Aff.)  Several months later, Gonzales responded that the salary was based on White's education, experience, and position.  (*Id.*)  Gonzales did not mention budgetary issues.  (*Id.*)

On December 3, 2003, White filed a charge of discrimination.  (Def. Ex. A.)  On February 23, 2004, the agency issued a right to sue letter.  (Def. Ex. B.)  On May 20, 2004, White filed his Complaint in this court.  On August 4, 2003, White tendered his resignation to the County.

On October 1, 2003, White filed an Amended Complaint, alleging (1) national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, ("Title VII"); (2) breach of employment contract; and (3) retaliation under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

On June 8, 2005, the County filed two motions for partial summary judgment.  In its first motion, the county argued that White failed to exhaust administrative remedies with regard to his claim that he was discriminated against during the selection process, his hostile work environment claim, and his general claim of national origin discrimination.  In its second motion, the County argued that White cannot demonstrate that the County failed to increase his compensation upon promotion, and that the anti-discrimination provision of the employee handbook does not create a contract.  In its reply to the second motion, the County stated that it no longer seeks summary judgment on the alleged failure to increase White's compensation upon promotion.

## II.  Summary Judgment Standard.

A motion for summary judgment may be granted only when "there is no genuine issue as to

any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  An issue

of material fact is genuine if a reasonable jury could return a verdict for the party opposing the

motion.  *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).  The substantive

law at issue determines which facts are material in a given case.  *See Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment."  *Id.*


**III.   Discussion.**

**A.   Whether White failed to exhaust administrative remedies with regard to his claim that he was discriminated against during the selection process, his hostile work environment claim, and his general claim of national origin discrimination.**

Title VII makes it unlawful for an employer to discriminate against any individual with respect

to the compensation, terms, conditions, or privileges of employment on the basis of national origin.

*See* 42 U.S.C. § 2000e-2(a)(1) (2005).  A plaintiff normally may not bring a Title VII action based

upon claims that were not part of a timely-filed administrative charge for which the plaintiff received

a right-to-sue letter.  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).  The

purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged

party, and to provide the investigating agency with the opportunity to conciliate the claim.  *Id.*

In his charge of discrimination, White stated:

On 5/13/03, I was promoted to Captain.
It states in the Human Resources Policies and Procedures that upon promotion an employee's salary shall be increased by a minimum of five percent and up to a maximum of 15 percent, unless otherwise approved by the County Manager. No salary upon promotion may exceed the maximum value of the new salary range nor fall below the minimum value of the new salary range. In my case, this did not occur. On the contrary, I am earning less than when I was a Lieutenant. It is my opinion that Chief Stan Holden made this decision to give me less in annual salary secondary to

cooperation with an investigation and by numerous racially intoned comments towards Hispanics.
I believe I have been discriminated against because of my national origin, Hispanic, in violation of Title VII of the Civil Rights Acts of 1964, as amended.

(Def. Ex. A.)

In his Amended Complaint, White alleges the County violated Title VII by "harassing, discriminating against, and creating a hostile work environment in matters relating to and arising from his application for promotion" and "otherwise discriminating against him because of his national origin." (Am. Compl.)

The Amended Complaint may be read to allege a discrete claim concerning the promotion application. A plaintiff must include each discrete discriminatory act in the administrative charge of discrimination in order to exhaust administrative remedies. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004). Unexhausted claims involving discrete employment actions are not viable. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir.2003). White failed to exhaust administrative remedies with respect to his application for promotion because he did not include it in his charge. Other discrete employment actions that were not included in the charge are similarly unexhausted.

Nothing in the administrative charge indicates a hostile work environment. To lay a factual foundation for a hostile work environment claim, White must allege facts indicating a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Construed in the light most favorable to White, the administrative charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment. White

failed to exhaust administrative remedies with respect to his application for promotion and a hostile work environment claim.  Consequently, the County is entitled to summary judgment on claims based on the application for promotion and a hostile work environment.


**B.    Whether the County is entitled to summary judgment on White's breach of contract claim based on anti-discrimination provisions in the County's personnel handbook and Human Resource Management Rules and Regulations.**

White alleges that the County breached its employment contract when it failed to maintain a workplace free of unlawful discrimination and when it refused to increase his pay on promotion by not less than five percent.  The County moved for summary judgment on both aspects of the breach of employment contract claim.  In his response, White argued forcefully regarding the refusal to increase pay, but did not mention the alleged contract to maintain a workplace free of discrimination. In its reply, the County stated that it no longer seeks summary judgment on the alleged failure to increase compensation upon promotion.  Thus, with respect to the second motion, only the alleged contract to maintain a workplace free of discrimination remains at issue.

New Mexico law holds that employee handbooks, personnel policy guides, and similar documents may constitute implied employment contracts.  *Whittington v. State Dept. of Public Safety*, 136 N.M. 503, 100 P.3d 209 (Ct. App. 2004).  However, the language that is purported to create an implied term must be sufficiently explicit to give rise to an implied contract.  *Hartbarger v. Frank Paxton Co.*, 115 N. M. 665, 668, 857 P. 2d 776, 779 (1993).  General policy statements of a non-promissory nature contained in an employee handbook are insufficient to create an implied contract.  *Sanchez v. The New Mexican*, 106 N.M. 76, 79, 738 P.2d 1321, 1324 (1987).

The County's personnel handbook provides:

Individuals will not be discriminated against on the basis of race, . . ., color, national origin, ancestry . . . in consideration for employment, promotions, transfers, duration of employment, compensation terms, conditions or privileges of employment by Santa Fe County.

(Undisputed Fact No. 27.)

The County's Human Resource Management Rules and Regulations state:

Santa Fe County strives to recruit and select the best qualified applicants for all positions in an open and competitive manner and to insure equal employment opportunity for all applicants and employees. Any qualified applicant shall have the opportunity to compete for available positions without regard to race, color, . . . national origin, ancestry . . ..

(Def. Ex. C.)

The anti-discrimination provisions state the County's general commitment to equal opportunity. The provisions are of a non-promissory nature and are too indefinite to constitute a contract. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 886 (10th Cir. 1985). The anti-discrimination provisions do not amount to a contract not to discriminate. *Id.*; *see also Padilla v. Your Credit, Inc.*, CIV 96-0814 BB/LFG (D.N.M. Apr. 19, 1997) (Black, J.); *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465-66 (10th Cir. 1994). Combined with White's lack of response to the County motion, this conclusion requires that the Court grant the motion for summary judgment on White's claim that the County breached a contract not to discriminate against him.

**WHEREFORE,**

**IT IS ORDERED** that the County's Motion for Partial Summary Judgment on Plaintiff's Title VII Claims (Doc. 48), is **GRANTED.**

**IT IS FURTHER ORDERED** that the County's Motion for Partial Summary Judgment on Plaintiff's Employment Discrimination and Breach of Contract Claims (Doc. 47), is **GRANTED AS TO THE BREACH OF CONTRACT CLAIM BASED ON ANTI-DISCRIMINATION**

**PROVISIONS IN THE COUNTY'S WRITTEN POLICIES, BUT OTHERWISE DENIED.**

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**